RICHARD POPE, Plaintiff-Appellee and Cross-Appellant, *v.* THOMAS P. PARKINSON *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District No. 13602

Opinion filed May 23, 1977.

Charles L. Palmer, of Champaign (Franklin, Flynn & Palmer, and James J. Costello and Timothy Madigan, both of Office of University Counsel, of counsel), for appellants.

Harold A. Baker, of Hatch & Baker, of Champaign, for appellee.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

In this case, we are presented with questions involving the applicability of the Open Meetings Act (Ill. Rev. Stat. 1971, ch. 102, par. 41 *et seq.*) to the deliberations of the University of Illinois Assembly Hall Advisory Committee (hereinafter referred to as the Committee) and with the public's need to be informed of the financial operations of the Assembly Hall. The defendants appeal the circuit court's judgment in favor of the plaintiff which directs the issuance of a writ of mandamus commanding the defendants to open and give public notice of the Committee's meetings. The plaintiff cross-appeals from a judgment in favor of the defendants in another mandamus action seeking the public disclosure of all financial reports and accounts related to the Assembly Hall operations.

On February 13, 1973, the plaintiff, a student reporter for the university newspaper, The Daily Illini, attended a meeting of the Committee in Champaign. After the members of the Committee voted to exclude the plaintiff from the meeting, plaintiff refused to leave and the Committee, as a consequence, moved the meeting to the office of the director of the Assembly Hall, Thomas Parkinson. The Committee then bolted the office door, effectively excluding the plaintiff.

On February 14, 1973, the plaintiff filed a two-count complaint against the Assembly Hall director, the chairman of the Committee and the University Board of Trustees. In count I, plaintiff sought a writ of mandamus commanding the defendants to open and give public notice of the Committee's hearings. In count II, plaintiff sought a writ of mandamus compelling the financial disclosure of Assembly Hall operations.

After separately hearing evidence on the two counts of the complaint, the circuit court, on June 21, 1974, entered an order directing the issuance of a writ of mandamus commanding that the Committee's meetings be opened to the public. On September 2, 1975, the court entered judgment in favor of the defendants on count II, the financial disclosure count, and on September 23, 1975, the court stayed enforcement of the writ of mandamus pending the outcome of this appeal.

The public policy of the State of Illinois regarding the meetings of public agencies is expressed in section 1 of the Open Meetings Act which provides:

"It is the public policy of this State that the public commissions, committees, boards and councils and other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." (Ill. Rev. Stat. 1971, ch. 102, par. 41.)

Section 2 of the Act also provides:

"All meetings of any legislative, executive, administrative or advisory bodies of the State, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue, shall be public meetings * * *." Ill. Rev. Stat. 1971, ch. 102, par. 42.

The Committee consists of four faculty and four student members appointed by the chancellor of the University. At trial, Thomas Parkinson, the Assembly Hall director, testified that the Committee advises him on all policy questions concerning the administration of the Assembly Hall and that, on occasion, the Committee reports directly to the chancellor. Parkinson also testified that the Committee functions solely as an advisory body to the chancellor and Assembly Hall director and that he is never bound by any decision or advice given by the Committee.

■■ The Committee, by its very nature, does not have deliberations which fall within the scope of the Open Meetings Act, because it is not formally appointed by, or accountable to, any public body of the State. Rather, the Committee is an internal committee within the University whose sole function is to advise University administrators on matters pertaining to internal university affairs. No statute creates the Committee or defines the limits of its authority. The Committee's unpaid members are not "officially" appointed by the chancellor, although they are informally appointed by the chancellor to an annual term and can be dismissed by the chancellor at any time. In the event of such a dismissal, the public tax burden will be neither increased nor decreased.

Recently, our brothers in the Second District were presented with a question relating to the applicability of the Open Meetings Act to the deliberations of an advisory committee established by the Kane County Board of Supervisors. (*People ex rel. Cooper v. Carlson* (1975), 28 Ill. App. 3d 569, 328 N.E.2d 675.) In *Cooper*, a development committee had been established by the Board to make recommendations to the Board in the area of land use regulation and planning. The development

committee than created a five-division department to provide technical assistance to the development committee. The division directors voluntarily arranged for technical staff meetings out of which were developed recommendations that were eventually submitted to the development committee. The petitioner in *Cooper* filed suit after being excluded from a "staff" meeting with representatives of a land developer, but the cause was dismissed after the circuit court found that:

> " * * * the staff members did not negotiate with land developers any binding agreements as alleged in the complaint, that the staff is not a 'body' within the meaning of the Illinois open meetings act and is not subject to its provisions; that it does not take 'actions' or have 'deliberations' within the meaning of that act, and that it would unnecessarily burden the staff to construe the act so as to include it within the meaning of the act." 28 Ill. App. 3d 569, 571, 328 N.E.2d 675, 677.

On appeal, the petitioner also directed the court's attention to a provision in section 2 of the Act (Ill. Rev. Stat. 1971, ch. 102, par. 42) which permits closed advisory committee meetings relating to the discussion of professional ethics or performance where the committee provides professional consultation to a public body. In holding that section 2 was inapplicable, the court stated:

> "That provision, on the contrary, emphasized the applicability of the act only to 'an advisory committee appointed' to provide such consultation, not to employees who voluntarily, and in the interest of efficiency or 'good staff work,' meet together periodically in the performance of their duties, preliminarily to providing their recommendations.
>
> If petitioner's argument were to be followed to its logical conclusion, a director of any county office or department who voluntarily decided to hold periodic meetings of his employees for the purpose of formulating recommendations to the County Board concerning improvement of the efficiency of his unit in its advisory process, would find that he would be bound to comply with the open meetings act. It is clear to us that such result was not intended." 28 Ill. App. 3d 569, 572, 328 N.E.2d 675.

The Act is intended, as expressed in its statement of public policy, to apply to meetings of " * * * public commissions, committees, boards and councils and the other public agencies * * *," but is not intended to open to the public the deliberations of merely informal advisory committees who discuss internal university affairs. A public administrator like the Assembly Hall director should be permitted to sample public opinion or to engage in reasonable inquiry regarding the acceptability of Assembly Hall programs. Similarly, the chancellor should be able to

appoint an advisory committee to assist him in his oversight of the director's stewardship.

According to defendant's exhibit number one, the university has 294 advisory committees and it would be an intolerable burden for this court to require that each of those committees open their doors to the general public. Whether or not every university committee is merely informal and advisory in nature and whether they deal with internal university affairs is a question which we do not decide. We, therefore, restrict the application of this opinion to this case, and we reverse the circuit court's judgment directing the issuance of a writ of mandamus commanding the defendants to open and give notice of the Committee's meetings.

In regard to the issue raised in the cross-appeal, we note that information concerning the contracts and profit or loss statements for performances staged at the Assembly Hall have been publicly released in a form totaling all Assembly Hall events without giving a breakdown reflecting the financial data for individual performances.

Section 1(c) of article VIII of the 1970 Illinois Constitution provides:

> "Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law."

In explaining the impact of this provision on the floor of the convention, Delegate David Kenney, a member of the Revenue and Financial Committee which drafted the provision, stated:

> "Those terms, 'reports and records,' are intended in the general sense and are not intended to extend to every working paper, every paper that may bear upon the financial transactions of state and local government. * * * Rather, the general reports which might be said to recapitulate or to summarize the general records which might do the same thing are those which are intended by this section. In the same way, the terms, 'receipt, expenditure, and use,' are terms which are generally employed. The purpose here is to require that reports and records of the receipt of public funds be such reports and records as would indicate the—in general, not in particular—not as to individuals, but in general—the source of revenue. Likewise, the intent is that reports and records bearing upon expenditures be those, perhaps, of a *summary nature of expenditures, not bearing on a particular transaction,* perhaps, though it is conceivable that that might be the case, but—more significantly—bearing upon the broad and general direction to which expenditures go." (Emphasis added.) 2 Record of Proceedings, Sixth Constitutional Convention 1872.

Counsel for the plaintiff has conceded that the State Records Act (Ill.

Rev. Stat. 1971, ch. 116, par. 43.4 *et seq.*) is inapplicable in this cause. Plaintiff, however, also relies on sections 3 and 3a of the Local Records Act (Ill. Rev. Stat. 1971, ch. 116, par. 43.103; 1972 Supp., ch. 116, par. 43.103a) which contain substantially the same language as the constitutional provision quoted above.

■■ Here, it is clear that the University is not a unit of local government or a school district to which section 3a of the Local Records Act (Ill. Rev. Stat. 1972 Supp., ch. 116, par. 43.103a) might apply. Rather, the University is an arm of the State of Illinois (*Kane v. Board of Governors* (1976), 43 Ill. App. 3d 315, 319, 356 N.E.2d 1340, 1345). Since we hold that the University has complied with the requirements of section 1(c) of article VIII of our 1970 Constitution by publicly disclosing a summary of Assembly Hall revenue and expenditures, we, accordingly, affirm the judgment of the circuit court which is challenged in the cross-appeal.

Reversed in part; affirmed in part.

MILLS and HUNT, JJ., concur.