NO. 4-96-0718

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE BOARD OF REGENTS OF THE REGENCY  ) Appeal from

UNIVERSITY SYSTEM,  ) Circuit Court of 

Plaintiff-Appellant,  ) McLean County

v.  ) No. 95MR89

CHARLES G. REYNARD, in his official  )

capacity as State's Attorney for McLean  )

County,  )

Defendant-Appellee,  )

and  )

THE PEOPLE OF THE STATE OF ILLINOIS, ex  )

rel. CHARLES G. REYNARD, State's  )

Attorney for the County of McLean,  )

McLean County, Illinois,  )

Counterplaintiff-Appellee and   )

Cross-Appellant,  )

v.  )

THE BOARD OF REGENTS, a body corporate  )

and politic for and on behalf of  )

Illinois State University,  ) Honorable

Counterdefendant-Appellant and  ) Ronald C. Dozier,

Cross-Appellee.  ) Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

This case arises under the Open Meetings Act (Act) (5 ILCS 120/1 
et
 
seq
. (West 1994)) and the Freedom of Information Act (FOIA) (5 ILCS 140/1 
et
 
seq
. (West 1994)).  The Board of Regents  of the Regency University System (Board) filed a complaint for declaratory judgment against defendant Charles G. Reynard in his official capacity as McLean County State's Attorney (Reynard), asking for a determination that the Act did not apply to the Athletic Council (Council) of Illinois State University (ISU).  After an investiga­tion, Reynard had previously told the Board that the Act did apply to meetings of the Council, and he had threatened criminal prosecution for violating the Act.  The Council had held meetings on March 22 and April 26, 1995, regarding the elimination of the men's wrestling and soccer programs at ISU.  

In the course of the investi­ga­tion, the Board had turned over to Reynard minutes and a tran­script of the March 22, 1995, meeting of the Council.  After the Peoria Journal Star made a request under the FOIA to Reynard for those documents, the Board filed a motion for prelimi­nary in­junction, seeking to prohibit Reynard from releasing the documents un­til the declaratory judgment action was decided.  Reynard filed a countercomplaint against the Board for declarato­ry judgment and injunctive relief, seeking a determination that the Act applies to the Council, an injunction against further viola­tions of the Act by the Council and an order requiring the Council to make minutes of the closed meetings available to the public.  Reynard alleged that the Council improperly went into closed session during meetings held in April 1995, failed to vote to go into closed session, and failed to keep minutes of the meetings in violation of the Act.  The countercomplaint asked that all matters discussed during the closed portion of the meetings and voted on during the open portion of the meetings be declared null and void.  

Subse­quent­ly, Twin-Cities Broad­cast­ing Corpora­tion, WJBC-WBNQ Radio (Twin-Cities), filed a similar request under the FOIA that was denied, and it sought injunctive relief to prevent withholding of documents by Reynard.  The trial court denied a motion by Twin-Cities for judgment on the pleadings and granted the Board's request for injunction.  Twin-Cities appealed the court's decision in its case, and this court handed down its decision affirming the trial court's judgment in 
Twin-Cities Broadcasting Corp. v. Reynard
, 277 Ill. App. 3d 777, 661 N.E.2d 401 (1996).

Reynard appealed the trial court's decision granting the Board's request for injunctive relief.  In 
Board of Regents of the Regency University System v. Reynard
, No. 4-96-0159 (August 7, 1996) (unpublished order under Supreme Court Rule 23), this court dismissed the appeal as moot because of the Board's action in voluntarily turning over to Twin Cities the minutes of the March 22, 1995, meeting of the Council.  

The Board filed an amended complaint in which it additional­ly asked for a declaratory judgment that the FOIA does not apply to records of the Council.  

A bench trial on the merits was held on June 5 and 12, 1996.  Ira Cohen, ISU professor of history and current parliamen­tarian of the Academic Senate (Senate), testified as to the governing structure of ISU and the role of the Council.  The Illinois General Assembly created the Board.  The Senate, which is the primary body determining educational policy at ISU, reports to the presi­dent who, in turn, reports to the Board.  Internal committees of the Senate are composed only of Senate members.  External committees are composed of people who are not on the Senate.  Under Senate bylaws, the role of Senate committees is to make reports and recommen­da­tions to the Senate.  The bylaws of the Council provide that it is an external, standing committee of the Senate.  It is to report to the student affairs committee.  In reality, it serves as an advisory body to the athletic director, with primary advisory responsibility to the president.  It gives advice on the develop­ment of budgets and policies governing the intercol­legiate athletic program.  The Council consists of voting and nonvoting members.  The voting faculty members are elected by the Senate for staggered three-year terms, the four voting student members are elected by the Senate for one-year terms, and the two voting alumni members are selected by the board of directors of the ISU alumni association.  The nonvoting Council members are the athletic director, associate athletic director, two coaches, and the president's administrative designee.  Members of the Council cannot be removed except for absences.  

Cohen testified that the Board and the president normally follow the recommen­dations of the Senate, but they are not required to do so.  The Council gives the president advice concerning National Collegiate Athletic Association (NCAA) regulations.  There are over 300 standing committees at ISU; in Cohen's opinion, compliance with the Act would be a "nightmare" for all these committees.  

Richard Greenspan, ISU athletic director, testified that he reports to the president.  The recommendations of the Council are not binding on him or the president.  The Council is an advisory body providing advice and feedback to the president and athletic director on athletic issues.  Greenspan uses the Council as a sounding board.  He is free to reject its advice and there have been occasions when he has done so.  The Council deals only with internal ISU matters, it has no budget, and none of its members are paid.  In 1993, a subcommittee of the Council developed a "Gender Equity Plan" (Equity Plan) in connection with ISU's need to comply with NCAA requirements on gender equity.  The Council considered the Equity Plan in 1993 and, in 1995, also considered the "Gender Equity Management Plan" (Management Plan).  The Manage­ment Plan first went to the president and, subsequently, the Council was asked for its recommen­dation.  After the Council recommended its adoption, the Management Plan was adopted.  As a result, men's soccer and wrestling were eliminated and women's soccer was added.   Greenspan stated that the athletic department provides visibility to ISU and provides opportunities for philanthropic ventures and fund-raising.  People from both inside and outside ISU donate to the athletic program.  Proper manage­ment of its sports program can bring prestige to a school.  Athletes often choose a school based on its athletic program.  

James Johnson, ISU psychology professor and former chair of the Council, testified that the Council exists to provide faculty input to the decision-making bodies at ISU.  It also reviews the athletic department's budget.  The Council did not vote to eliminate any sports programs; rather, it voted to approve the president's recommenda­tion to eliminate those programs.  He believes the decision to eliminate the men's programs was made prior to seeking the Council's recommendation.  The Equity Plan simply discussed the subject of gender equity; the Management Plan was the actual proposal to eliminate the men's sports.  

The parties stipulated that if called as a witness, Thomas Wallace, former president of ISU, would testify that he is familiar with the ISU constitution, bylaws of the Senate, and committee structure of the Senate.  The president is the chief academic and administra­tive officer of ISU.  The Council is an external committee of the student affairs committee of the Senate.  The general responsibili­ty of the Council is to serve as an advisory body to the athletic director and the president's administrative designee, with primary advisory responsi­bility to the president.  One of its specific advisory duties is to advise on all matters involving changes in program direction, especially the reduction or expansion of sports offerings.  In addition to the Council, there are over 200 internal committees at ISU that make recommendations to the president.  At the March 22, 1995, Council meeting, the Council reviewed a draft of the Management Plan and, at the conclusion of the meeting, recommended the abolition of the men's soccer and wrestling programs as outlined in the Management Plan, in order to be in compliance with Title IX
 of the United States Code (title IX) (20 U.S.C. §1681 
et
 
seq
. (1990)) and to be within ISU's spending limita­tions.  He consid­ered the Council's recommen­da­tions in the Manage­ment Plan, but did not consider it to be binding on him or the Board.  He did not consid­er any recommen­dations of the Council to be binding upon him prior to March 22, 1995.  He did not always accept recommenda­tions of the Council.  

The parties entered into a stipulation of facts that stated in relevant part:  (1) the Board is the governing body of ISU; (2) ISU is governed by the ISU constitution, bylaws of the Senate, and the committee structure of the Senate (supplement to the bylaws of the Senate), the Board, the president of ISU and other state and federal laws; (3) the Board is an arm of the State of Illinois; (4) the Council is an external standing committee of the Senate; (5) on March 8, 1995, notice of the March 22, 1995, meeting of the Council was sent to faculty members of the Council; (6) on March 9, 1995, notice of cancellation of that meeting was sent to student members of the Council and to the coaches' representa­tives; (7) on March 22, 1995, the Council convened to discuss and make a recommen­dation to the president regarding the Management Plan and how to come into compliance with title IX; (8) prior to the beginning of that meeting, several members of the public were present outside the meet­ing room, seeking entrance, and included in this group were members of the ISU men's soccer and wrestling teams, coaches, and media; (9) at the meeting, the Council voted to recommend to the president that he accept and implement the Management Plan; (10) on April 23, 1995, notice of the April 26, 1995, Council meeting was posted; (11) the Council went into a 10-minute executive session on April 26, 1995, and no minutes of that meeting were taken; and (12) athletic department funding comes from student fees, general revenue (taxes), generated funds (ticket sales), and donated funds.  

Testimony on Reynard's countercomplaint indicated that the Council has a regular meeting time once per month from August until May and that at the April 26, 1995, meeting, the Council first went into executive session, where ISU's attorney gave her opinion as to the potential for litigation under title IX and advised Council members that what they said could be used in litigation.  Apparent­ly, there had been talk concerning a possible lawsuit against ISU by the women's soccer club (Club).  The attorney told the Council that the Club had threatened to sue ISU if women's soccer were not added as a sport.  However, stipulated testimony from an advisor to the Club indicated that in March and April 1995, the Club had no intent to sue ISU.  The Council was also told that if ISU dropped the men's sports programs, ISU would be sued over that as well.  No paperwork was presented concerning this threat­ened litigation.  There was no discussion during the executive session concerning litigation strategy or settlement.  In November 1995, a federal lawsuit was filed against ISU based upon the elimination of the men's sports programs.  One of the claims in that suit was based on title IX.  

Testimony from former athletes in the men's soccer and wrestling programs was presented to establish the hardship they suffered as a result of the elimination of those programs.  

After the close of all evidence, the trial court made its ruling in open court, ruling that the Council is a public body subject to the Act and the FOIA.  Among the findings of the court were (1) the policies
 
of the Act and the FOIA are that those statutes are to be interpreted very broadly; (2) this court's decision in 
Pope v. Parkinson
, 48 Ill. App. 3d 797, 363 N.E.2d 438 (1977), provides an exception to that policy; (3) the important factors in deciding the case are:  (a) who appoints the Council and to whom it is account­able, (b) whether it is solely advisory, and (c) whether the Council deals only with internal ISU affairs; (4) 
the Senate is a public body subject to the Act, in that it (along with the president) is considered the chief governing agency of ISU; (5) there are differ­ences between this case and 
Pope
 in regard to who appoints Council members, the degree of formality with which they are appointed, and the duties assigned to them; (6) it was within the authority of the Council to discuss the threat­ened litigation in closed session, even though the lawsuit had not been filed (and was not filed until November 1995); (7) the Council had little, if any, real authority and operated primarily as a sounding board; (8) the issue of gender equity was taken to the Council, not so much for its recommenda­tion but to provide an additional layer of shared accountabili­ty for a decision that was going to be contro­versial no matter what the final outcome; and (9) the requirement that the Council report to the student affairs committee is a formality, as it is clear the Council really exists to report to and advise the athletic director and president of ISU.  The court declined to grant Reynard's request that the discus­sions of the executive sessions and vote in the open portion of the meetings be declared null and void.  The court indicated the decision for elimina­tion of the men's sports programs would have been made by the president and athletic director in any event, regardless of the Council's failure to comply with the Act.  Thus, it would serve no useful purpose to grant the request, and the court indicated it did not know what it meant to declare discus­sions null and void and that it would not provide any actual benefit to the public or any real relief.  The court declined to rule explicitly on whether the Council properly voted to go into closed session or properly made a finding in the closed session that there was imminent litiga­tion. 

In denying the Board's motion to reconsid­er, the trial court elaborated on its decision, stating it felt this was a close case and, due to the similarities between the Council and the committee in 
Pope
, it would be easy to say that this case is controlled by 
Pope
.  The court also noted that decisions made by the Council were considerably wider in scope than those made by the 
Pope
 committee.  The court also stated its opinion that if the president of ISU intended to use the Council to give legitimacy to the decision to eliminate the men's sports programs, it should be done openly.  The Board then filed its notice of appeal and Reynard filed a notice of cross-appeal.

The decision of the trial court to grant or deny declaratory relief is within its sound discretion and will not be disturbed on review absent an abuse of that discretion.  
Nussbaum Trucking Co. v. Conley
, 236 Ill. App. 3d 809, 811, 602 N.E.2d 982, 983 (1992).  

The definition of "public body" is very similar in the Act and the FOIA.  Section 1.02 of the Act (5 ILCS 120/1.02 (West 1994)) defines "public body" in the following manner: 

"For the purposes of this Act:

***

'Public body' includes all legislative, executive, administrative or advisory bodies of the state, counties, townships, cities, vil­lages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to commit­tees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue, except the General Assem­bly and committees or commissions there­of."

Section 2 of the FOIA (5 ILCS 140/2 (West 1994)) defines 

"public body" as follows:  

"Definitions.  As used in this Act:

(a) 'Public body' means any legisla­tive, executive, administra­tive, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incor­porated towns, school districts and all other municipal corporations, boards, bureaus, commit­tees, or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue."

The stated public policies behind these two statutes are also quite similar.  The public policy of the Act states that public bodies exist to carry out the people's business and the people have a right to be informed of the conduct of their business.  5 ILCS 120/1 (West 1994).  The specific excep­tions set forth in the Act to the public's right to attend are to be strictly construed against closed meetings.  5 ILCS 120/1 (West 1994).  The FOIA is based upon a policy of full disclosure regarding the affairs of government and the official acts and policies of public officials and public employees.  5 ILCS 140/1 (West 1994).  Given the above similari­ties, we see no reason to distinguish between the two statutes for purposes of this case.  See also 
Hopf v. Topcorp, Inc.
, 256 Ill. App. 3d 887, 893, 628 N.E.2d 311, 315 (1993).

In 
Pope
, a reporter from a student newspaper was excluded from a meeting of the University of Illinois assembly hall advisory committee.  He sued for a writ of 
mandamus
 requiring defendants to give notice of committee meetings and open the meetings to the public.  The committee was composed of four faculty and four student members who were appointed on an annual basis by the chancel­lor of the university.  They could be dismissed by the chancellor at any time.  The committee advised the assembly hall director on policy questions concern­ing the adminis­tra­tion of the assembly hall and occasionally reported directly to the chancel­lor, neither of whom was bound to accept the committee's advice. The trial court issued the writ and defen­dants appealed.  This court reversed, finding that the committee was not subject to the Act.  This decision was based on the fact that the committee was not formally appointed by or accountable to any public body of the state.  The court emphasized that the committee was solely an advisory body internal to the university whose function was to advise university administrators on matters pertaining to internal university affairs.  Committee members were not officially ap-pointed and could be removed at any time at the discretion of the chancel­lor.  The court also noted that the chancellor should be able to appoint an advisory committee to assist him in his oversight of the assembly hall director's stewardship.  
Pope
, 48 Ill. App. 3d at 799-800, 363 N.E.2d at 440-41.

The Board argues that an overly broad definition of "public body" would be very burdensome to ISU.  It urges this court, in determin­ing whether the Council is subject to the Act and the FOIA, to engage in a balancing test that weighs the policy of openness in both statutes against the burden imposed by forcing the Council to comply with their requirements.  According to the Board, the questions are what the cost will be for the governmental entity in terms of efficiency if an openness requirement is imposed and how much will imposing the requirement benefit the public by informing it of the workings of government.  There is nothing in either statute that suggests a body deter­mined to be public may be exempt from the requirements of the statutes simply because it may be a burden to comply.  This court has previously declined to engage in a balancing analysis in construing exemp­tions from disclosure in the FOIA, holding that the exemp­tions are 
per
 
se
 in nature.  
Healey v. Teachers Retirement System
, 200 Ill. App. 3d 240, 243, 558 N.E.2d 766, 768 (1990).  Similarly, the Act contains very explicit exceptions to the openness requirement.  Therefore, we decline to engage in any balancing analysis as to either statute.  

The question before us is whether the Council is a public body for purposes of the Act and the FOIA.  In making this determina­tion, we note that the fact the Council is an advisory body does not exempt it from application of the statutes.  Both statutes specifically include advisory bodies in their defini­tions of "public body."  We further note that "subsidiary bodies" are also considered public bodies under the statutes.  The Board argues that the Council is not subsidiary to the Senate because, as an external committee, no member of the Senate can sit on the Council.  However, this fact is not determinative.  It is clear from a reading of the definition of "public body" in both statutes that inclusion within that defini­tion depends primarily upon organiza­tional structure.  Thus, we look to the structure of ISU, the Senate, and the Council in determining whether the Council is subject to the Act and the FOIA.  In doing so, we are aware of the dearth of case authority available to guide us.  

We note that the parties in this case have stipulated that the Board is an arm of the State of Illinois.  The Board is also the governing body of ISU.  ISU is governed by its constitu­tion, the bylaws of the Senate, and the committee structure of the Senate, which is set forth in the supplement to the Senate bylaws.  Pursuant to the constitution, the Senate is the primary body to determine educational policy of ISU and to advise the president on its implementation.  One of the Senate's duties is to determine policy for intercollegiate programs and activities.  As the chief administrative and academic officer of ISU, the president is also part of the governing authority of ISU.  The Council was created by the Senate, which has delegated specific duties to it.  Pursuant to Senate bylaws, committees it creates are to act as investigative and deliberative bodies for the purpose of reporting to the Senate and making recommendations to it.  In the supplement to its bylaws (supple­ment), the Senate has created a committee structure, including the Council.  The Council is an external standing committee of the Senate.  Functions of the Council are described in the supplement as follows:  

"The *** Council shall serve as an advi­sory body to the Athletic Director and the President's Administrative Designee, with primary advisory responsibility to the Presi­dent, and shall submit all academ­ic policy recommendations and all changes in function and structure to the Student Affairs Committee of the Academic Senate, and to the President.  The *** Council shall give advice in the devel­opment of budgets and policies gov­erning the Intercollegiate Athlet­ic Program.  In doing so, the Council shall strive for an athletic program which yields optimum educa­tion bene­fits for participating athletes, meets the concerns of the [ISU] communi­ty, alum­ni, and interested public, and main­tains a whole­some relationship with other universi­ties.  The President shall delegate the man­agement func­tions of the Athletic Department to the Ath­letic Director.  In addition, the *** Coun­cil shall file a report of the total athletic budget with the Academic Senate Budget Commit­tee and the Academic Senate Student Affairs Committee at the inception of each budget year.  The *** Council shall recom­mend the final budget to the President of [ISU]."

The supplement sets forth specific advisory duties for the Council, including advising on all matters that involve changes in program direction, especially expansion or reduction of sports offerings.  The supplement states that the Council is to report to the student affairs 
committee of the Senate.  

The differences between the origin of the Council and the origin of the assembly hall committee in 
Pope
 are apparent.  
The 
Pope
 committee was truly an informal, 
ad
 
hoc
 commit­tee, appointed by the chancellor of the university, that rendered advice to the chancel­lor solely on one specific internal universi­ty matter.  In contrast, the Council is part of the formal organiza­tional structure of ISU and its duties and responsibilities are set forth in the supple­ment.  The broad scope of the Council's responsibili­ties as set forth in the supplement contrasts sharply with the limited duties of the committee in 
Pope
.  There is no dispute that the Board is a public body for purposes of the Act and the FOIA.   As the Senate is a creature of the Board, that body is a subsidiary public body of the Board.  Although the question of whether the Senate is a public body was not, strictly speaking, before the trial court, a finding that the Senate is a public body is implicit in the court's decision.  Under the Act and the FOIA, a subsidiary public body is itself a public body for purposes of complying with the require­ments of both statutes.  Thus, we conclude that the Council is a public body and must comply with the Act and the FOIA.  

We find further support for this conclusion in a 1975 Illinois Attorney General opinion.  There, the question was whether the Intercolle­giate Athletic Board, an advisory board appointed by the faculty and student senates, was a public body under the Act.  That board advised the president of Eastern Illinois Unviersity (EIU) on matters involving policy and budget considerations relating to intercolle­giate athletics.  The president was free to accept or reject the board's advice.  In a meeting not open to the public, the board had recom­mend­ed dropping three intercol­le­giate sports.  The Attorney General opined that EIU was a public corpora­tion subject to the Act and, as an advisory body to EIU's presi­dent, the board was also a public body.  1975 Ill. Atty. Gen. Op. 136.  The trial court's decision here find­ing that the Council is a public body was not erroneous.  

We next turn to Reynard's cross-appeal.  He first argues that the trial court erred in refusing to declare void the Council's decision recommending adoption of the Management Plan and to order it to reconsid­er the issue of gender equity in an open meeting.  He also asked the trial court to declare the discussions in the Council's executive session null and void.  Section 3(c) of the Act (5 ILCS 120/3(c) (West 1994)) allows the court, having regard for orderly adminis­tration, the public interest, and the interests of the parties, to grant such relief as it deems appropri­ate when the Act has been violated.  This relief includes granting 
mandamus
 relief requiring that a meeting be open to the public, granting an injunction against future violations of the Act, ordering the public body to make available to the public minutes of a closed meeting or declaring null and void any final action taken at a closed meeting.  
Mandamus
 relief is unavailable as the closed meeting had already been held.  No minutes of the executive sessions were taken, but minutes of the balance of the Council's March and April 1995 meetings were transcribed and given to the media.  We are unaware as to how mere discussions can be declared null and void.  The only decision of the Council that could be declared void is the recommendation to the president that the Management Plan be adopted.  The Council is an advisory body only.  It is not vested with decision-making powers.  The Council did not make the decision to adopt the Management Plan.  Thus, since the decision lay in the hands of the president and not the Council, it is difficult to understand what would be accom­plished by voiding the Council's recommendation.  The parties disagree as to how much influence the Council's recommenda­tion had on the president's ultimate decision.  Nonetheless, the president was not bound by the Council's recommendation and, in light of the fact that the men's soccer and wrestling programs were eliminated over two years ago and all the coaches and athletes are gone, nothing would be gained by voiding the Council's recommenda­tion.  Howev­er, while the trial court did not err in refusing to grant the relief Reynard request­ed, the court should have granted the injunctive relief Reynard requested by issuing an injunction against future viola­tions of the Act by the Council. If relief for a violation of the Act can be obtained, it should be granted once the violation is found to have occurred.     

Reynard's final argument is that the trial court erred in finding that the litigation exception applied to executive meetings of the Council, in light of the court's refusal to find that the exception was properly invoked.  Reynard notes that no votes were taken to go into executive session and no minutes of the meetings were taken.  In addition, no findings of probable or imminent litigation were made.  Reynard complains that ISU's legal counsel simply placed a "gag order" on Council members by telling them that whatever they said in the open portion of the meeting could be used in court against them.  He notes the evidence shows there was no discussion of any litigation strategy in the closed sessions.  

Section 2(c)(11) of the Act (5 ILCS 120/2(c)(11) (West 1994)) provides that a public body may hold closed meetings to consider litigation when an action has been filed against, or by, the public body and is pending, or when the public body finds that an action is probable or imminent, in which latter case the basis for the finding shall be recorded and entered into the minutes of the closed meeting.  Section 2a of the Act (5 ILCS 120/2a (West 1994)) provides that in order to have a closed session, the public body must have a public majority vote taken at a meeting open to the public.  Only topics specified in the vote to close may be considered during the closed meeting.  In addition, section 2.06(a) of the Act (5 ILCS 120/2.06(a) (West 1994)) requires that public bodies keep minutes of all meet­ings, whether open or closed.  

It is clear that the Council failed to follow the necessary procedures under the Act to invoke the litigation exception.  Thus, the trial court erred in failing to so find.  The question becomes what remedy under section 3(c) of the Act was available to the trial court to remedy this violation.  The only realistic course of action for the trial court was to issue an injunction against future violations of the Act by the Council.  Thus, we conclude that the trial court erred in failing to find that the Council did not properly invoke the litigation exception under the Act, and we hold that an injunction should have been issued as to this viola­tion, as well as to the failure to hold open meetings as required by the Act.  In light of our holding, we need not reach the question of whether the Council's discussions in its executive session were proper under the litigation exception. 

Accordingly, the trial court's judgment is affirmed as to the finding that the Council is subject to the Act and the FOIA.  However, the cause is remanded to the trial court for the entry of an injunction under section 3(c) of the Act against future viola­tions of the Act by the Council.

Affirmed and remanded.  

McCULLOUGH and KNECHT, JJ., concur.