UNIVERSITY PROFESSIONALS OF ILLINOIS, Local 4100 of the Illinois Federation of Teachers, *et al.*, Plaintiffs-Appellants, v. JAMES STUKEL *et al.*, Defendants-Appellees.

First District (1st Division)  No. 1—02—3429

Opinion filed December 8, 2003.

Jenner & Block, of Chicago (William D. Heinz, Shelley Malinowski, and Laura A. Thomas, of counsel), for appellants.

Cornfield & Feldman, of Chicago (Stephen A. Yokich, of counsel), for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, University Professionals of Illinois, Local 4100 of the Illinois Federation of Teachers, is a labor organization that represents workers employed by state universities (Local 4100). Plaintiff, Mitchell Vogel, is the president of Local 4100. The Illinois Board of Higher Education (IBHE) is a public body that coordinates educational, research, and public service programs for the state universities in Illinois. Defendants, James Stukel, Sylvia Manning, Nancy Cantor, Richard Ringeisen, James Walker, Walter Wendler, David Werner, John Peters, Victor Boschini, Louis Hencken, Donald Spencer, Elnora Daniel, Salme Steinberg, and Stuart Fagan, are all presidents or chancellors of various state universities in Illinois. The defendants formed an organization called the Council of Presidents (Council) to give advice and to make recommendations to the IBHE. The Council of Presidents meets prior to IBHE meetings and designates one of its members to speak on behalf of the Council.

Plaintiffs filed a complaint alleging that the Council, which held meetings closed to the public, was meeting as a public body and was subject to the provisions of the Open Meetings Act (Meetings Act) (5 ILCS 120/1 *et seq.* (West 2000)). Defendants moved to dismiss the complaint under section 2—615 of the Illinois Code of Civil Procedure on the ground that the Council was not a public body under the Meetings Act. 735 ILCS 5/2—615 (West 2000). On October 9, 2002, the trial court granted their motion to dismiss.

■ The only issue on appeal is whether the trial court properly granted defendants' section 2—615 motion to dismiss. An order granting a section 2—615 motion to dismiss is reviewed *de novo. Wakulich v. Mraz*, 203 Ill. 2d 223, 228, 785 N.E.2d 843 (2003). In reviewing a motion to dismiss:

"We take as true all well-pled facts and reasonable inferences therefrom and consider only those facts in the pleading and

included in attached exhibits. [Citation.] We will not affirm dismissal of a complaint unless it is clear that a plaintiff cannot prove a set of facts that will entitle him to the relief sought. [Citation.] However, legal conclusions and factual conclusions that are unsupported by allegations of specific facts will be disregarded in ruling on a motion to dismiss. [Citation.]" *Safeway Insurance Co. v. Daddono*, 334 Ill. App. 3d 215, 218, 777 N.E.2d 693 (2002).

After reviewing the complaint, we agree that the Council is not a public body under the Meetings Act and we therefore affirm.

The following facts are alleged in the complaint. The IBHE was set to meet in Chicago on December 11, 2001. At this meeting, one of the topics to be discussed was IBHE budget recommendations for the 2002-2003 academic year. The complaint alleged that these budget recommendations would have a substantial impact on the salaries of faculty members represented by Local 4100.

According to Local 4100, the Council was to give advice and recommendations to the IBHE concerning the positions of the presidents and the chancellors of the state universities in regard to annual budget and appropriations issues as well as other subjects that related to affording higher education to the citizens of Illinois. The complaint alleged that the Council met prior to the IBHE meetings and designated one of its members to speak on its behalf at the IBHE meeting. According to Local 4100, the meetings of the Council are paid for out of funds appropriated by the state. It also alleged that at its meetings, the Council discussed issues relating to public higher education in the state and to the funding thereof.

The complaint also alleged that the meetings of the Council were closed to the public, that the Council published no agenda for the meetings, and that no notice of the meetings was given to the public. According to Local 4100, the Council published no minutes or other public record of its meetings.

Paragraph 22 of the complaint alleged:

"The meetings of public bodies in Illinois are governed by the Open Meetings Act, 5 ILCS Section 120/1, et seq. The policy behind the Open Meetings Act is 'that public bodies exist to aid in the conduct of people's business and that the people have a right to be informed as to the conduct of their business.' Exceptions to this policy are permitted 'only in those limited circumstances where the General Assembly has specifically determined that the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would clearly be in danger of unwarranted invasion.' "

The complaint went on to state that the definition of the term "public body" in the Meetings Act included advisory bodies to state

boards such as the IBHE. The complaint then stated that the Council constituted an "advisory body" to the IBHE and was supported by tax revenues. As a result, the Council fell within the definition of public body in the Meetings Act.

The complaint claimed that the failure of the Council to publish its meeting agendas or to open the meetings to the public constituted a violation of the Meetings Act. Local 4100 additionally asserted that, unless enjoined, the Council would continue to hold its meeting in secret.

■ Section 1.02 of the Meetings Act states, in pertinent part:
> " 'Public body' includes all legislative, executive, administrative or advisory bodies of the State *** and all *** boards, bureaus, committees or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees ***." 5 ILCS 120/1.02 (West 2000).

Section 2 of the Meetings Act states, in pertinent part:
> "Openness required. All meetings of public bodies shall be open to the public unless excepted in subsection (c) and closed in accordance with Section 2a." 5 ILCS 120/2 (West 2000).

Local 4100 contends that the Council is an "advisory body" under the plain language of section 1.02 of the Meetings Act. Local 4100 concludes that because the Council advises the IBHE of its position on various matters, the Council is an "advisory body" and falls within the definition of a public body under section 1.02. Although the term "advisory body" is not defined in the Meetings Act, the question of what constitutes an advisory body has been addressed by the Illinois courts.

In *People ex rel. Cooper v. Carlson*, 28 Ill. App. 3d 569, 328 N.E.2d 675 (1975), the petitioner-newspaper publisher filed a suit seeking a writ of *mandamus* to compel defendant Kane County to allow the petitioner and the general public to attend meetings of the staff of the Kane County development committee, which concerned a proposed development project by the Mark VII Corporation. The petition also sought an injunction prohibiting future meetings without giving prior public notice. The trial court dismissed the suit and an appeal followed.

In *Carlson*, the Kane County Board of Supervisors (Board) established a development committee, which was comprised of nine of the Board members for the purpose of considering and making recommendations to the entire Board concerning zoning and land planning development. The Board approved subdivision regulations that had been adopted by the development committee. To more adequately perform its functions, the development committee created a develop-

ment department and divided staff into five separate divisions due to the specialization, technical knowledge, and expertise necessary in each division. Each of these divisions included clerical and technical employees.

The directors of these various divisions voluntarily arranged for weekly "technical staff meetings." These meetings were not required by the Board or by the development committee. The record showed that the meetings were held for interdepartmental convenience and efficiency with the objective of saving the development committee time. No secretary was appointed to keep minutes of these meetings. Instead, an employee would take either longhand or typewritten notes. Based on the discussions at the technical meetings, recommendations were made to the development committee.

The petitioner learned that the "staff" of the development committee had scheduled a meeting on a certain date which concerned the actions of a development project that involved the Mark VII Corporation in Kane County. The petitioner requested to attend the meeting, was denied access, and filed suit.

After hearing all the evidence, the trial court dismissed petitioner's action finding that the staff was not a public body within the meaning of the Meetings Act. The trial court held that to construe the Meetings Act in the manner suggested by the petitioner would unnecessarily burden the staff.

In affirming the trial court, the appellate court found that there was no statute, ordinance, resolution, or other official action by the Board or by the development committee designating the technical staff as a public body or subsidiary body. *Carlson*, 28 Ill. App. 3d at 571. It further noted that the function of the technical meetings was to provide more efficient service to the development committee and the Board whose meetings were held in compliance with the Meetings Act. *Carlson*, 28 Ill. App. 3d at 571.

The petitioner also argued that if any number of development committee or Board members met, they would become an advisory committee or public body giving professional advice. The petitioner pointed out that such an advisory committee did not fall within a specific exception to the Meetings Act which, at the time, allowed closed meetings where an advisory committee was appointed to provide a public body with professional consultation on matters of professional ethics or performance. *Carlson*, 28 Ill. App. 3d at 572.

The appellate court also rejected this argument, holding that the provision relied upon applied to an advisory committee appointed to provide such consultation, not to employees who voluntarily met in the interest of efficiency and to enhance the performance of their du-

ties. *Carlson*, 28 Ill. App. 3d at 572. The appellate court ultimately concluded that the Meetings Act was directed to meetings of public commissions, committees, boards, and councils, and not to voluntary meetings or conferences of department heads or employees who seek to improve their performance in conducting business. *Carlson*, 28 Ill. App. 3d at 572

In *Pope v. Parkinson*, 48 Ill. App. 3d 797, 363 N.E.2d 438 (1977), the plaintiff, a student reporter for a University of Illinois newspaper, attended a meeting held by the defendant University of Illinois Assembly Hall Advisory Committee (Committee). After members of the Committee voted to exclude the plaintiff from the meeting, the plaintiff refused to leave. The Committee then moved the meeting and refused admission to the plaintiff. The plaintiff filed a complaint against the chairman of the Committee and the University of Illinois board of trustees.

Plaintiff's complaint sought a writ of *mandamus* commanding the defendants to open and give notice of the Committee's meetings. After hearing evidence, the trial court entered an order issuing a writ of *mandamus* which instructed the Committee to open its meetings to the public. The defendants then appealed.

In *Pope*, the appellate court found that the Committee, by its very nature, did not have deliberations that fell within the scope of the Meetings Act because it was not appointed by, or accountable to, any public body of the state. *Pope*, 48 Ill. App. 3d at 799. Specifically, the court stated:

> "[T]he Committee is an internal committee within the University whose sole function is to advise University administrators on matters pertaining to internal university affairs. No statute creates the Committee or defines the limits of its authority. The Committee's unpaid members are not 'officially' appointed by the chancellor, although they are informally appointed by the chancellor to an annual term and can be dismissed by the chancellor at any time. In the event of such a dismissal, the public tax burden will be neither increased nor decreased." *Pope*, 48 Ill. App. 3d at 799.

Relying upon the decision in *Carlson*, noted above, the court concluded that the Meetings Act was intended to apply to public commissions, committees, boards, councils, and other public agencies, but was not intended to open to the public the deliberations of merely informal advisory committees who discuss internal university affairs. *Pope*, 48 Ill. App. 3d at 800.

Local 4100 attempts to distinguish *Carlson* and *Pope* on the ground that both cases "dealt with internal committees composed of the staff of public officials," whereas here, the Council is "not the staff of the

IBHE and [is] not subordinate to it." Local 4100 contends that the Council advises the IBHE on public issues and not the internal affairs of the agency and therefore should not be exempted from the requirements of the Meetings Act.

Local 4100 contends that *People ex rel. Difanis v. Barr*, 83 Ill. 2d 191, 414 N.E.2d 731 (1980), is controlling. In *Difanis*, nine members of the Urbana city council decided to hold a prearranged party caucus immediately prior to a special session of the Urbana city council on October 23, 1978. Eight of the nine council members attending the party caucus were democrats. Notably, eight persons constituted a quorum of the council. The party caucus was held in the home of a city council member approximately 90 minutes before the city council meeting and it was called to discuss matters the city council would consider at the meeting later that night. No agenda was set for the caucus and no votes were taken.

The parties agreed that the nine defendant council members were not meeting at the caucus as a committee of the Urbana city council and that they received no compensation for attending the meeting. Four of the five matters to be discussed at the city council meeting were discussed at the caucus. The record indicated that three votes were taken at the city council session on matters discussed at the caucus. On a vote to approve a ward map, the nine defendants voted as a bloc and the measure was passed by the city council 9 votes to 4. The defendants stipulated that they had caucuses of this nature in the past and would continue to do so in the future.

The plaintiff, the Champaign County State's Attorney, filed a declaratory judgment action seeking a declaration that the conduct of the nine defendants violated the Open Meetings Act. The trial court entered judgment in the plaintiff's favor and the appellate court affirmed.

On review, the supreme court held that the clearly enunciated public policy of the Meetings Act would be poorly served if the court were to carve out exceptions other than those expressly stated in the Act for informal political caucuses where, in that case, public business was deliberated and it appeared that a consensus on at least one issue was reached outside the public view. *Difanis*, 83 Ill. 2d at 199. The court further found that the Meetings Act had been amended to include unofficial or informal meetings. *Difanis*, 83 Ill. 2d at 200. In support of this proposition, the court quoted the California decision in *Sacramento Newspaper Guild, Local 92 v. Sacramento County Board of Supervisors*, 263 Cal. App. 2d 41, 69 Cal. Rptr. 480 (1968), which stated:

" 'An informal conference or caucus permits crystallization of

secret decisions to a point just short of ceremonial acceptance. There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices.' " *Difanis*, 83 Ill. 2d at 200, quoting *Sacramento Newspaper Guild, Local 92 v. Sacramento County Board of Supervisors*, 263 Cal. App. 2d at 50-51, 69 Cal. Rptr. at 487.

Thus, the *Difanis* court found that to allow the nine defendants to circumvent the Meetings Act simply because the meeting was designated as an informal gathering or informal caucus would thwart the intent of the Meetings Act. *Difanis*, 83 Ill. 2d at 200.

Local 4100 claims that the Council here has all the earmarks of a public body. The Council members are all "high public officials" who have "round the clock responsibilities." In addition to other issues pertaining to higher education, the Council advises the IBHE on budgetary and appropriations issues. In turn, the IBHE advises the General Assembly on these issues and coordinates the teaching, research and service missions of the institutions run by defendants. Local 4100 alleges that the meetings in question concern public issues and are financed by public funds, and further allege that defendants meet prior to regularly scheduled meetings of the IBHE and then designate one of the Council members to speak on their behalf. Local 4100 alleges that "the obvious purpose of the meetings is to foster the presentation of a 'unified front' and to maximize the weight of the recommendations of the Presidents and chancellors as a whole." Thus, Local 4100 concludes that defendants' actions are precisely the conduct prohibited by *Difanis* and fall squarely within the meaning of public business that must be open to the public under the Meetings Act.

Defendants rely on *Carlson*, *Pope*, and another decision, *Board of Regents of the Regency University System v. Reynard*, 292 Ill. App. 3d 968, 686 N.E.2d 1222 (1997), to support their position on appeal.

In *Reynard*, the plaintiff, the Board of Regents of the Regency University System (Board), filed a declaratory judgment action against the defendant, the local State's Attorney, seeking a determination that the Meetings Act did not apply to the Athletic Council (Athletic Council) of Illinois State University (ISU). The defendant had previously informed the Board that the Meetings Act did apply to Athletic Council meetings and he had threatened criminal prosecution for violating the Meetings Act.

In *Reynard*, the record indicated that the Illinois General Assembly created the Board and that the academic senate (senate), which

was the primary body that determined education policy at ISU, reported to the president who, in turn, reported to the Board. External senate committees were those composed of people who are not on the senate. The role of the senate committees was to make reports and recommendations to the senate. The bylaws of the Athletic Council provided that it was an external standing committee of the senate. The record also showed that, in reality, the Athletic Council functioned as an advisory body to the athletic director, with primary advisory responsibilities to the president. Further, the Athletic Council gave advice on the development of budgets and policies governing the intercollegiate athletic program.

The ISU athletic director testified that the Athletic Council's recommendations were not binding on him or the president. He stated that the Athletic Council was an advisory body providing advice and feedback to the president and the athletic director on athletic issues. He said the Athletic Council only dealt with internal ISU matters, it had no budget, and none of its members was paid for its work.

After a bench trial, the trial court found that the Athletic Council was a public body subject to the Meetings Act. The issue on appeal was whether that decision was proper. Before providing its analysis, the reviewing court noted that the "fact the [Athletic] Council [was] an advisory body [did] not exempt it" from the application of the Meetings Act. *Reynard*, 292 Ill. App. 3d at 977.

In affirming the trial court, the appellate court noted that, "[i]t is clear from a reading of the definition of 'public body' in [the Meetings Act] that inclusion within that definition depends primarily upon organizational structure." *Reynard*, 292 Ill. App. 3d at 977. Thus, the court looked to the structure of ISU, the senate, and the Athletic Council to determine whether the Athletic Council was subject to the Meetings Act. *Reynard*, 292 Ill. App. 3d at 977.

The appellate court also observed that the senate was the primary body set up to determine educational policy at ISU and the Athletic Council was created by the senate, which had delegated specific duties to the Athletic Council. *Reynard*, 292 Ill. App. 3d at 977. The court distinguished the Athletic Council from the informal, *ad hoc* committee in *Pope*, finding that the Athletic Council was part of the formal organizational structure of ISU and its duties and responsibilities were set forth in the senate's supplemental bylaws. Specifically, the court stated that the committee in *Pope*, appointed by the chancellor of the university, rendered advice to the chancellor on one specific internal university matter. However, the broad scope of the Athletic Council's responsibilities set forth in the supplemental bylaws contrasted sharply with the limited duties of the committee in *Pope*.

*Reynard*, 292 Ill. App. 3d at 978. Finally, the court concluded that the senate and the Athletic Council were both public bodies under the Meetings Act. *Reynard*, 292 Ill. App. 3d at 978. It therefore determined that the Athletic Council had to comply with the Meetings Act. *Reynard*, 292 Ill. App. 3d at 978.

Defendants claim that the holding in *Reynard* undermines Local 4100's analysis of *Carlson* and *Pope*. As noted above, Local 4100 argues that the Meetings Act did not apply in *Carlson* and *Pope* because they dealt with "internal committees" that dealt with the agency's "internal affairs." Defendants point out that, in *Reynard*, the Meetings Act was held to apply to the Athletic Council in that case even though it was an internal committee of ISU. Further, defendants assert that Local 4100 provides no contrary authority to the rule announced in *Reynard* that "organizational structure" is a primary consideration in determining whether an organization is a public body under the Meetings Act. *Reynard*, 292 Ill. App. 3d at 977.

■ We find that *Carlson*, *Pope*, and *Reynard* are instructive on the question of whether the Council of Presidents is an advisory body of the state under the Meetings Act. These cases set forth a number of factors a court should review in deciding whether an entity is a "public body" or an "advisory body" under the Meetings Act. Those factors include who appoints the members of the entity, the formality of their appointment, and whether they are paid for their tenure; the entity's assigned duties, including duties reflected in the entity's bylaws or authorizing statute; whether its role is solely advisory or whether it also has a deliberative or investigative function; whether the entity is subject to government control or otherwise accountable to any public body; whether the group has a budget; its place within the larger organization or institution of which it is a part; and the impact of decisions or recommendations that the group makes. *Carlson*, 28 Ill. App. 3d at 571-72; *Pope*, 48 Ill. App. 3d at 799-800; *Reynard*, 292 Ill. App. 3d at 974, 977-78.

Because most of what Local 4100 pled amounts to conclusions and because it did not plead any of the factors listed in *Reynard*, we find the complaint was properly dismissed.

■ The following is only a summary of what the complaint states but contains the allegations we find significant for our review. First, it alleges that presidents and chancellors of the various state universities "formed an organization called the Council of Presidents." Next, it states that the "purpose of the [Council] is to give advice and recommendations to the IBHE regarding the positions of the Presidents and Chancellors of the State Universities regarding annual budget and appropriations issues and other issues which relate to provision of public

higher education to the citizens of Illinois." It states that the "meetings of the Council are paid for out of appropriated funds." It further states that the Council "constitutes an advisory body to the IBHE and is supported by tax revenues." The complaint concludes that the Council "falls within the definition of a public body [under] the Open Meetings Act." Although these are not all of the allegations contained in the complaint, these are the primary allegations that relate to the Council's formation and its structure.

These allegations, however, are conclusions unsupported by any specific facts, and "factual conclusions that are unsupported by allegations of specific facts will be disregarded in ruling on a motion to dismiss." *Daddono*, 334 Ill. App. 3d at 218. Because these allegations provide no facts, they are insufficient to support the claim that the Council is an "advisory body" under the Meetings Act.

In our view, what is absent from the complaint is even more significant than the conclusory allegations described above. For example, the complaint does not allege that the Council is part of the formal organizational structure of IBHE. It does not allege that any of the Council members are members of the IBHE. There are no facts in the complaint to suggest that the Council members are "paid for their tenure." The complaint does not state that the Council has any duties assigned to it from the IBHE. As far as we can tell, the Council does not have any bylaws; and there is no state statute that created the Council. As pointed out above, the Council was formed by the presidents and chancellors of the various state universities to express its views to the IBHE. Granted, its role is advisory but that role is one that the Council created. There are no allegations to suggest that the Council has a deliberative or investigative function in relation to the IBHE or that the Council is subject to government control. It does not appear that the Council is otherwise accountable to any public body. It does not appear to have a budget; if it does, no budget is reflected as an allegation in the complaint. Although each member is part of a larger organization or institution, specifically, the university he or she heads, no member of the Council is a member of the IBHE. Finally, there is no allegation regarding the impact of the Council's recommendations upon the IBHE. Because the factors set out in *Reynard* are totally absent from the complaint, we find it was properly dismissed.

Notably, Local 4100 does not discuss the holding in *Reynard*, which states that inclusion within the definition of a public body under the Meetings Act depends primarily on organizational structure. *Reynard*, 292 Ill. App. 3d at 977. In *Reynard*, the court found that the Athletic Council in that case was part of the formal organizational structure of

ISU. *Reynard*, 292 Ill. App. 3d at 978. It also found that the duties of the Athletic Council as an advisory body were set forth in the supplemental bylaws of the senate. *Reynard*, 292 Ill. App. 3d at 978. Because the senate in *Reynard* was a creature of the Board, it was a subsidiary public body of the Board and, in turn, the Athletic Council was a public body under the Meetings Act as it was an advisory body to the senate. *Reynard*, 292 Ill. App. 3d at 978. The Council in this case is not part of the organizational structure of the IBHE and is clearly not a creature of the IBHE.

We also find that *Difanis*, the primary authority relied upon by Local 4100, is distinguishable from this case. In *Difanis*, nine Urbana city council members held a party caucus 90 minutes prior to a city council meeting to discuss matters the city council would consider at its public meeting later that night. On one of the issues discussed at the council meeting, the nine defendants voted as a bloc consistent with the consensus they had reached at the earlier meeting. The court found that this conduct fell within the hard core of the proscriptions set forth in the Meetings Act. *Difanis*, 83 Ill. 2d at 211.

*Difanis* did not consider whether the defendants were an "advisory body" under the Meetings Act. Unlike the Council in this case, the defendants comprised a faction of city council members that held a closed-door meeting 90 minutes before the city council meeting. As pointed out above, the Council is not part of the IBHE. Instead, the complaint alleged that its purpose was to give advice and recommendations to the IBHE. It did not allege that the Council had authority to make any IBHE decisions, to vote on issues on the IBHE agenda, or to issue determinative recommendations to the IBHE. For these reasons, we do not find *Difanis* to be persuasive.

We agree with defendants that the fact that the Council in this case was comprised of "high" or "elite" public officials who had "round the clock" responsibilities had no bearing on whether the Council was a public body under the Meetings Act. Local 4100 does not offer any authority in support of the fact that, because the Council was made up of important public officials, it should be considered an advisory and or a public body under the statute.

Finally, we agree with defendants that the Meetings Act must be construed to avoid unintended results. When the applicability of a statute is ambiguous, it "will be given a construction that is reasonable and that will not produce absurd, unjust, or unreasonable results, which the legislature could not have intended." *In re Application of the County Collector of Du Page County for Judgment for Taxes for the Year 1993*, 187 Ill. 2d 326, 332, 718 N.E.2d 164 (1999). As the court noted in *Pope*, the University in that case had 294 advisory commit-

tees and "it would be an intolerable burden for [a] court to require that each of those committees open their doors to the general public." *Pope*, 48 Ill. App. 3d at 801. We do not believe that the legislature intended the Meetings Act to be so broadly interpreted that every time public officials informally meet or converse, those conversations become a matter of public entitlement.

We do not suggest to curtail the intent of the Meetings Act, which is to "ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly." 5 ILCS 120/1 (West 2000). However, the Meetings Act cannot be triggered every time public officials meet and converse. 5 ILCS 120/2(a) (West 2000).

For the reasons above, the trial court's order of October 9, 2002, is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.