SAFEWAY INSURANCE COMPANY, Plaintiff-Appellant, v. LOUIS T. DADDONO *et al.*, Defendants-Appellees (All Pro Insurance Agency, Inc., Defendant).

First District (5th Division)   No. 1—01—1995

Opinion filed September 27, 2002.

216

Sudekum, Cassidy & Shulruff, Chtrd., of Chicago (Florence M. Schumacher and Ian T. Matyjewicz, of counsel), for appellant.

Joseph I. Adler, of Chicago, for appellees.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Safeway Insurance Company (Safeway), brought this action for breach of fiduciary duties against All Pro Insurance Agency, Inc. (All Pro), and two individuals, defendant Louis T. Daddono and defendant Kenneth Khano. The trial court dismissed the counts against the individual defendants but granted Safeway leave to amend. Finally, the trial court dismissed Safeway's fifth amended complaint against Daddono and Khano individually with prejudice. Safeway now appeals.

On appeal, Safeway argues that the trial court erred in dismissing its complaint where the complaint adequately stated a cause of action against Daddono and Khano for violation of the Illinois Insurance Code (215 ILCS 5/508.1 (West 1996)) and breach of fiduciary duty.

For the reasons that follow, we hold that the trial court correctly granted Daddono's and Khano's motions to dismiss.

## I. BACKGROUND

Safeway is an insurance company licensed to issue automobile insurance policies in the State of Illinois. All Pro was an insurance firm registered as an insurance producer in the State of Illinois. As an insurance producer, All Pro would act as an agent or broker in soliciting insureds for insurance companies and would, in turn, receive a percentage of all paid premiums as a commission. Louis T. Daddono and Kenneth Khano were licensed insurance producers in the State of Illinois and were the sole shareholders of All Pro.

On May 1, 1996, Safeway and All Pro entered into a written contract that authorized All Pro to sell Safeway's insurance policies to the public. The contract provided that All Pro would receive 20% of all paid premiums as commission for the sales.

Pursuant to section 508.1 of the Illinois Insurance Code (215 ILCS 5/508.1 (West 1996)), all money received by a producer for selling or renewing insurance policies was to be held by the producer in a fiduciary capacity for the benefit of the insurer. This account is commonly referred to as a premium fund trust account, or "PFTA." In accordance with the statute, All Pro set up and maintained such an account at North Bank.

On July 18, 1997, Safeway filed suit against All Pro, and Daddono and Khano individually. The complaint alleged counts in breach of contract, fraud and conversion. The trial court dismissed the counts pled against Daddono and Khano individually and granted Safeway leave to amend. In its fifth amended complaint, Safeway alleged All Pro, Daddono and Khano violated the Insurance Code and breached fiduciary duties to Safeway by misappropriating, mishandling and/or withholding from Safeway premiums collected on Safeway policies. Safeway alleged that Daddono and Khano were individually liable as they were the sole shareholders and officers of All Pro and were the only signators on All Pro's PFTA.

Specifically, the fifth amended complaint alleged that All Pro, Daddono and Khano withheld premiums, allowed the balance in the PFTA to be less than the amount deposited less lawful withdrawals, allowed the PFTA to have a negative balance on four specific dates, misappropriated fiduciary funds, acted in a financially irresponsible manner, commingled funds, failed to maintain cash receipts, failed to maintain a cash disbursement register, failed to document in writing commissions withdrawn from the PFTA, failed to support PFTA journal entries with receipts, and failed to maintain books and record for

seven years. The fifth amended complaint alleged that Safeway sustained money damages in the amount of $22,079.

The trial court dismissed Safeway's fifth amended complaint as to Daddono and Khano with prejudice. In the same order, the trial court granted All Pro's motion to dismiss and granted Safeway 28 days to "attach the missing exhibits to the fifth amended complaint." Safeway now timely appeals the judgment as to Daddono and Khano individually.

II. ANALYSIS

Safeway argues that the trial court erred in dismissing its fifth amended complaint where the complaint adequately stated a cause of action against Daddono and Khano individually for violations of the Illinois Insurance Code and breach of fiduciary duty. Safeway additionally argues that it is proper to plead against Daddono and Khano in the alternative.

■ We review a dismissal under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)) *de novo. Neade v. Portes,* 193 Ill. 2d 433, 439 (2000). We take as true all well-pled facts and reasonable inferences therefrom and consider only those facts in the pleading and included in attached exhibits. *Weatherman v. Gary-Wheaton Bank of Fox Valley,* 186 Ill. 2d 472, 491 (1999). We will not affirm dismissal of a complaint unless it is clear that a plaintiff cannot prove a set of facts that will entitle him to the relief sought. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.,* 186 Ill. 2d 419, 424 (1999). However, legal conclusions and factual conclusions that are unsupported by allegations of specific facts will be disregarded in ruling on a motion to dismiss. *Cummings v. City of Waterloo,* 289 Ill. App. 3d 474, 479 (1997).

■ Section 508.1 of the Illinois Insurance Code (215 ILCS 5/508.1 (West 1996) (now 215 ILCS 5/500—115 (West Supp. 2001))) stated in pertinent part:

> "Any money which an insurance producer *** receives for *** policies of insurance shall be held in a fiduciary capacity, and shall not be misappropriated, converted or improperly withheld. Any insurance company which delivers to any insurance producer in this State a policy or contract for insurance pursuant to the application or request of an insurance producer, authorizes such producer to collect or receive on its behalf payment of any premium which is due on such policy or contract for insurance ***." 215 ILCS 5/508.1 (West 1996).

Thus, insurance producers act as fiduciaries in holding the collected premiums in trust for the benefit of the insurer. See *Lincoln Towers*

*Insurance Agency, Inc. v. Boozell*, 291 Ill. App. 3d 965, 971 (1997). Illinois courts have noted that the purpose of section 508.1 is "to protect a consumer who pays the agent from any further liability for the premium if the independent producer fails to remit to the insurer." *Scott v. Assurance Co. of America*, 253 Ill. App. 3d 813, 817 (1993)

■ The gist of Safeway's argument on appeal is that according to this provision All Pro had a duty to hold monies received from insureds in a fiduciary capacity. Safeway alleges that because Daddono and Khano were the sole signators on the PFTA account and the sole shareholders of All Pro, they had a duty as well and are individually liable for any misappropriations from All Pro's PFTA. Safeway asserts that the fiduciary duty can be imposed upon Daddono and Khano individually by "piercing the corporate veil." Safeway directs our attention to case law holding that while corporate status generally shields corporate officers and shareholders from liability from corporate debts and obligations, this protection does not shield corporate officers from their own wrongdoing. *Veteran Supply Co. v. Swaw*, 192 Ill. App. 3d 286 (1989).

Safeway likens the case at bar to *Veteran Supply Co*. In that case the facts were not in dispute. The plaintiff sold goods to Brother's Pizza Pub, Inc. (Brother's). In payment, five checks were drawn on Brother's corporate checking account and were sent to and received by the plaintiff. Four of the checks totaling $1,728.60 were signed by the defendant Todd Swaw, a corporate officer. One check in the amount of $400 was signed by Richard Swaw, an authorized signatory of the corporation. After the checks were returned to the plaintiff stamped "NSF," the plaintiff, by its attorney, made written demands for payment within 30 days. The demands were made by certified mail on the defendants individually at their residences, not on the corporation. The amounts were never paid. When the defendants signed the checks and issued them to the plaintiff, they knew that there were insufficient funds to cover the checks and that they had the intent to defraud.

In that case, to recover under the applicable deceptive practices statute, the plaintiff had to show (1) that the defendants delivered a check to obtain personal property; (2) that the defendants knew at the time that the account was insufficient to pay the check; (3) that the defendants acted with the intent to defraud; and (4) that the defendant failed to pay on demand. *Veteran Supply Co.*, 192 Ill. App. 3d at 288; 720 ILCS 5/17—1a (West 1996). We acknowledged that a corporate officer may be liable for the negligence of the corporation, fraud, trespass to realty, wilfully inducing breach of contract, and conversion. *Veteran Supply Co.*, 192 Ill. App. 3d at 290-91. The record evinced that

plaintiff's well-pled facts established defendants' liability under the terms of the statute. Therefore, we held that defendants, corporate officers, who signed and issued checks with intent to defraud, were personally liable to the supplier regardless of whether they received property for their own use. *Veteran Supply Co.*, 192 Ill. App. 3d at 291.

Safeway also relies on *National Acceptance Co. of America v. Pintura Corp.*, 94 Ill. App. 3d 703 (1981). In *National*, we held that a corporate officer could be held individually liable for conversion committed on behalf of and for the sole benefit of the corporation. We held that "a corporate officer's individual liability for conversion committed by him personally in behalf of the corporation is established in the same manner as his liability for any other tort; by proof of active participation in the conversion. Inasmuch as the parties stipulated that defendant Nieto endorsed and deposited some checks, and directed the same as to other checks, we find that his active participation was shown sufficiently to render him individually liable in conversion of those funds." *National*, 94 Ill. App. 3d at 707.

Both *Veteran Supply Co.* and *National* are clearly distinguishable from the case at bar. First, the deceptive practices statute at issue in *Veteran Supply Co.* is clearly not applicable to the case at bar. Second, this court upheld finding corporate officers personally liable in *Veteran Supply Co.* where plaintiff's well-pled facts established that the officers' conduct fell within the purview of the statute. Likewise, the record in *National* established proof of the corporate officer's active participation in the conversion. In the case at bar, Safeway's fifth amended complaint is devoid of any specific allegations of how Daddono or Khano is personally responsible for, or actively participated in, All Pro's alleged misappropriations. As defendant Khano's brief aptly asserts, defendants are not arguing with the well-established principle that a corporate officer cannot commit a tort as agent for the corporation and escape liability by using the corporation as a shield. Instead, they maintain, and we agree, that Safeway has failed to set forth facts that establish Daddono and/or Khano individually owed or breached a fiduciary duty to Safeway.

Safeway's fifth amended complaint contains the following allegations. Safeway alleges that Daddono and Khano were the sole shareholders and officers of All Pro. A corporate officer is not normally liable on a contract made by his corporation, even if he is the sole stockholder. *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 59, 67 (1979). So that allegation, alone, does not establish liability. That allegation alone also does not impart "active participation" in any misappropriation. Safeway next alleges that following execution of the contract, Daddono and Khano "collected premiums

for selling Safeway's insurance policies to the public." However, the contract specifically provides that the producer, All Pro Insurance Agency, collects premiums for selling the policies. There are no facts pled that Daddono or Khano personally sold Safeway's insurance policies or that Daddono and Khano collected premiums for personal accounts.

Safeway next alleges that "Safeway was required to forward Daddono and Khano a monthly statement of account" and that they in turn were required to remit to Safeway the amount shown on the statement within 45 days. Safeway additionally alleges that it forwarded the monthly statements of March 1997 through May 1997 to Daddono and Khano. However, again, the contract provides that Safeway was required to provide *All Pro* with a monthly statement and *All Pro* was required to remit the statement amount. Also, while the complaint refers to the specific statements from 1997 that Safeway alleges it forwarded to Daddono and Khano, those statements were not attached to the fifth amended complaint and were therefore not considered below.

Safeway next alleges that Daddono and Khano "maintained the banking accounts" as proof that they were individually involved in misappropriation. However, the record reveals that the name on the account is "All Pro Insurance Agency, Inc, Premium Trust Fund Account." While it is true that Daddono and Khano were signatories on the corporation's account, that alone does not impart individual liability on Daddono and Khano. Safeway does not provide, nor can we locate, any case law that holds as such. The fact that they were both signators on the account also does not support a conclusion that Daddono or Khano individually maintained the PFTA. The record reveals that the PFTA account had three individual signators listed, Louis T. Daddono, Kenneth Khano and Louis Daddono, and only one signature was required for account transactions. Most importantly, Safeway, other than realleging the same 12 actions to Daddono, Khano and All Pro separately, fails to designate which individual undertook which misappropriation activity. Safeway has not alleged that Daddono or Khano individually deposited and withdrew funds from the PFTA in an inappropriate manner.

The well-pled facts in this case establish that Safeway entered into a contract with All Pro. All Pro is a licensed insurance producer in the State of Illinois. All Pro, pursuant to section 508.1 of the Illinois Insurance Code (215 ILCS 5/508.1 (West 1996)) established and maintained a PFTA. All Pro sold Safeway insurance policies according to the parties' contractual agreement and was required to remit net premiums to Safeway. These facts do not establish a cause of action

against Daddono and Khano individually. Under Illinois law, a party must allege facts stating the elements of the cause of action; allegations of legal conclusions are simply not enough. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790 (2001). Safeway has failed to do so in this case.

Still, Safeway maintains that "the propriety of holding Daddono and Khano individually liable for violations of 215 ILCS 5/508.1 is buttressed in this case by the provisions of the Illinois Insurance Code itself." Safeway points to section 499.1 of the Illinois Insurance Code, which requires registered insurance producer firms to "appoint one or more licensed insurance producers who are officers, directors, or partners in the firm to be responsible for the firm's compliance with the insurance laws." 215 ILCS 5/499.1 (West 1996) (now 215 ILCS 5/500—30(c) (West Supp. 2001)). Safeway argues that this requirement evinces the legislature's intent to avoid shielding corporate officers from individual financial responsibility.

We note that this is the entirety of Safeway's argument. Safeway has utilized the statute's provision in a general public policy argument but has failed to directly apply it to the facts at hand. While the statute does evince an intention for individual responsibility, it specifically provides that the responsibility is to be borne by the designated individual. The bottom line is that Safeway has failed to allege, either in its fifth amended complaint or in its brief on appeal, that either Daddono or Khano was that appointed individual under the statute. Safeway boldly asserts in its reply brief that the "proposed Sixth Amended Complaint extinguishes this issue by alleging that Daddono was in fact the Section 499.1 designee." However, Safeway does not explain why it was unable to provide that allegation in the fifth amended complaint or at any point prior. In addition, as we discuss below, it is not appropriate for this court to allow Safeway to amend the complaint under the facts of this case.

Safeway effectively admits to the insufficiency of its pleading in its reply brief. Safeway states that it "recognizes that there are flaws in the fifth amended complaint. The counts against the individual defendants essentially repeat verbatim the allegations against the corporation, and, as a result, contain allegations which are necessary to the cause of action against the corporation, but not necessary to the cause of action against the individual defendants." Safeway faults Daddono's and Khano's response briefs for focusing on those flaws instead of focusing on the "substantive" deficiencies of the cause of action. That argument is ill-conceived. The very question on appeal from the dismissal of a complaint based on legal insufficiency is whether the *allegations* in the complaint, when viewed in a light most

favorable to the plaintiff, are *sufficient* to state a cause of action upon which relief can be granted. 735 ILCS 5/2—615 (West 2000). It is exactly the appellee's task on appeal to point out the insufficiency of the complaint's allegations.

Safeway's proposed solution is for this court to permit amendment of the fifth amended complaint. While it is certainly within this court's authority to allow Safeway to amend under Supreme Court Rule 366 (134 Ill. 2d R. 366), we find that it is not appropriate in this case. Cases in which we have utilized Rule 366 to permit amendment present unique factual scenarios. In *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 914 (1999), we allowed plaintiff leave to file a fourth amended complaint under Rule 366 on the theory of *quantum meruit*. In that case the trial court had dismissed the *quantum meruit* claim in the third amended complaint because plaintiff had failed to plead sufficient facts to allow the court to determine whether plaintiff could recover. The opportunity to amend was proper where the trial court had improperly criticized the *quantum meruit* claim in the second complaint on the basis that it was too specific, which resulted in plaintiff's abandonment of that claim. *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d at 913-14; see also *Johnson v. American Airlines, Inc.*, 278 Ill. App. 3d 624, 628 (1996) (due to the unique posture of this case, where plaintiffs could not have anticipated our supreme court's ruling in *Wolens v. American Airlines, Inc.*, 157 Ill. 2d 466 (1993), we exercised our power under Supreme Court Rule 366 and granted plaintiffs leave to amend their complaints in order to replead common law breach of contract counts that conformed with *Wolens*); see also *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010 (1993) (plaintiff was granted leave to amend his complaint pursuant to Illinois Supreme Court Rule 366 where the climate in the trial court was inhospitable to plaintiff's theory of action and the opposing party virtually conceded the factual sufficiency of the pleading with respect to that theory). In the case at bar, Safeway has already been given six opportunities to sufficiently plead its cause of action before the trial court. It has not provided us with any sound basis for allowing amendment under Supreme Court Rule 366.

Finally, Safeway maintains that it was proper to plead against Daddono and Khano in the alternative. Section 2—405(c) of the Code of Civil Procedure provides:

> "If the plaintiff is in doubt as to the person from whom he or she is entitled to redress, he or she may join two or more defendants, and state his or her claim against them in the alternative in the same count or plead separate counts in the alternative against different defendants, to the intent that the question which, if any, of

the defendants is liable, and to what extent, may be determined as between the parties." 735 ILCS 5/2—405(c) (West 2000).

However, as Daddono's brief correctly states, Safeway's fifth amended complaint does not state it is pleading claims in the alternative against each of the defendants under section 2—405(c). 735 ILCS 5/2—405(c) (West 2000).

Instead, Safeway's fifth amended complaint states its theory of liability is based in "alternative liability" and cites *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222 (1990). While *Smith* does provide that alternative liability may apply when two or more defendants act tortiously toward a plaintiff who, through no fault of her own, cannot identify which one of the joined defendants caused the injury (*Smith*, 137 Ill. 2d at 235), we find that this theory has no application to the case at bar. This theory of liability is limited. Cases subsequently citing to *Smith* and the "alternative liability" theory have involved tort actions filed against drug manufactures where the plaintiff was unable to determine which defendant was the actual manufacturer of the drug. In this case, the record establishes that Safeway had the bank records in its possession for a number of years. Therefore, Safeway could have easily have used those records to determine which defendant endorsed the checks, and chose not to.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.