EDENS PLAZA BANK, Plaintiff-Appellant, v. GUS J. DEMOS *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—94—0756

Opinion filed November 29, 1995.—Rehearing denied February 5, 1996.

202

GREIMAN, P.J., dissenting.

George D. Karcazes and Gary E. Green, both of Martin & Karcazes, Ltd., of Chicago, for appellant.

Michael R. Fumo, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

This case involves two lawsuits that were consolidated. In lawsuit No. 87—L—24944, the plaintiff Edens Plaza Bank filed a two-count complaint against defendants Gus J. Demos, James Demos, 120 South State Street Restaurant, Inc., an Illinois corporation, and Louis Demos to recover the principal and interest on a promissory note given by Park Plaza Restaurant, Inc., d/b/a Park Plaza Restaurant, to Edens Plaza Bank. Count I of the complaint was against Gus J. Demos, James Demos and 120 South State Street Restaurant, Inc. Count II of the complaint was only against Louis Demos. In their answer to the complaint the defendants raised affirmative defenses.

In lawsuit No. 90—L—16268, plaintiff Park Plaza Restaurant, Inc., brought an action against defendant Edens Plaza Bank based on the promissory note and several lender liability claims similar to the affirmative defenses raised in lawsuit No. 87—L—24944. The No. 90—L—16268 lawsuit charges Edens Plaza Bank with breach of contract, consumer fraud and deceptive business practices, and bad faith with respect to the promissory note.

On the scheduled trial date of the consolidated lawsuits, pursuant to a settlement agreement and mutual release, all of the claims in lawsuit No. 90—L—16268 and all of the claims and affirmative defenses in count I of lawsuit No. 87—L—24944 were dismissed with prejudice. After a bench trial on count II in lawsuit No. 87—L—24944, the trial court filed findings of fact and conclusions of law, and entered judgment in favor of Louis Demos and against Edens Plaza Bank. Edens Plaza Bank has appealed. We affirm the judgment.

On June 30, 1985, Park Plaza Restaurant, Inc., d/b/a Park Plaza Restaurant, executed a promissory note for $320,000 plus interest, in favor of the Edens Plaza Bank. The United States Small Business Administration (SBA) was a participant-guarantor of the transaction; SBA was a 90% guarantor. In addition, Gus J. Demos, James Demos and 120 South State Street Restaurant, Inc., executed written

guarantees as primary guarantors for the promissory note. Also, Louis Demos executed a written guarantee for the promissory note "limited to $50,000."

The loan agreement documents for the promissory note provided that as collateral the Edens Plaza Bank had a first lien security interest in the assets of the Park Plaza Restaurant. The loan agreement documents also provided that the $320,000 for the promissory note was not to be disbursed immediately, but rather the proceeds for the promissory note were to be disbursed in stages as follows:

"1. $163,000.00 for leasehold improvements on business premises located at 150 N. Michigan Ave. Chicago, Illinois.

2. $107,000.00 to purchase machinery, equipment, furniture and/or fixtures.

3. $50,000.00 for working capital. There is to be no blanket disbursement of working capital."

According to the testimony of the president of Edens Plaza Bank, John Jones, the Edens Plaza Bank disbursed the loan proceeds for the promissory note as follows:

1. On September 23, 1985, the Edens Plaza Bank paid $2,880 directly to SBA as a fee for being a participant-guarantor. The $2,880 that the Edens Plaza Bank paid directly to SBA as a fee was accounted for by the Edens Plaza Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

2. On August 14, 1985, the Edens Plaza Bank paid $160,000 to Park Plaza Restaurant, Inc., for leasehold improvements.

3. On October 17, 1985, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount of $1,006 for interest due on the promissory note. The $1,006 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

4. On November 6, 1985, the Edens Plaza Bank paid $57,649 to Park Plaza Restaurant, Inc., for leasehold improvements.

5. On November 6, 1985, the Edens Plaza Bank paid $35,767 to Park Plaza Restaurant, Inc., for furniture and fixtures.

6. In November 1985, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount of $1,660.26 for interest due on the promissory note. The $1,660.26 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

7. On November 30, 1985, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount

of $41,166.60 for interest due on the promissory note. The $41,166.60 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

8. On January 16, 1986, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount of $2,616.35 for interest due on the promissory note. The $2,616.35 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

9. On January 16, 1986, the Edens Plaza Bank made a $5,888.67 entry in the Park Plaza Restaurant, Inc., account. The record is unclear as to whether the $5,888.67 was actually transmitted to Park Plaza Restaurant, Inc., as working capital or was merely a debit and credit interest due entry charged to working capital. No documentary proof was introduced into evidence.

10. On March 6, 1986, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount of $2,728.29 for interest due on the promissory note. The $2,728.29 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

11. On March 7, 1986, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount of $8,213.05 for interest due on the promissory note. The $8,213.05 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

12. On May 13, 1986, the Edens Plaza Bank debited and credited the Park Plaza Restaurant, Inc., account in the amount of $8,257.54 for interest due on the promissory note. The $8,257.54 debit and credit for interest due was accounted for by the Edens Park Bank by treating it as if it were part of the $50,000 working capital to be disbursed under the promissory note.

13. On May 15, 1986, the Edens Plaza Bank paid $16,584 to Park Plaza Restaurant, Inc., for leasehold improvements, furniture and fixtures.

According to the testimony of John Jones, no other disbursements for the promissory note were made by the Edens Plaza Bank.

In sum, the total disbursements made by Edens Plaza Bank for leasehold improvements and furniture and fixtures were $270,000. According to Park Plaza Restaurant, Inc., no money was actually transmitted by Edens Plaza Bank to Park Plaza Restaurant, Inc., for working capital.

Park Plaza Restaurant, Inc., alleged that it made numerous phone calls and written demands to Edens Plaza Bank to disburse the $50,000 working capital to it pursuant to the promissory note, but the Edens Plaza Bank refused the requests and demands. As a result, the Park Plaza Restaurant closed in 1986, and all of its assets were sold for $50,000 at a public sale. The $50,000 was applied toward a reduction of the amount due on the promissory note pursuant to the Edens Plaza Bank's secured interest under the promissory note. Also, pursuant to its being a 90% guarantor on the promissory note, on November 18, 1986, the SBA reimbursed the Edens Plaza Bank for $284,261.25.

On November 23, 1987, the Edens Plaza Bank filed lawsuit No. 87—L—24944 based entirely on the promissory note. The SBA was not a party to the lawsuit, and the Edens Plaza Bank did not bring the lawsuit as an assignee or subrogee of the SBA. The SBA was not a party to either of the two lawsuits, and the SBA is not making any claim. Nor is the SBA involved in the appeal.

Count I of lawsuit No. 87—L—24944 names as defendants Gus J. Demos; James Demos; and 120 South State Street Restaurant, Inc. Count I alleges that Park Plaza Restaurant, Inc., defaulted on the promissory note and that "there is due and unpaid to the Plaintiff on the aforesaid Note as of October 6, 1987, the sum of $299,243.92 in principal, and the sum of $42,137.42 in interest, with a *per diem* thereafter of $85.20 per day." Count I further alleges that Gus J. Demos, James Demos, and 120 South State Street Restaurant, Inc., were guarantors of the promissory note. Count I concludes as follows:

> "WHEREFORE, the Plaintiff, EDENS PLAZA BANK, an Illinois Banking Corporation, prays for Judgment herein against the Defendants, GUS J. DEMOS, JAMES DEMOS, and 120 SOUTH STATE STREET RESTAURANT, INC., jointly and severally, in the amount of THREE HUNDRED FORTY-ONE THOUSAND THREE HUNDRED EIGHTY-ONE and 34/100 ($341,381.34) DOLLARS, plus a per diem of EIGHTY-FIVE and 20/100 ($85.20) DOLLARS from October 6, 1987 until paid, together with all of the Plaintiff's expenses herein."

Count II is against defendant Louis Demos only. Count II alleges: "The obligation of the Defendant, Louis Demos, pursuant to his Guaranty, is in the amount of $50,000.00, as appears from his Guaranty, a copy of which is attached hereto."

The defendants answered the complaint, and included the following affirmative defenses:

### *"AFFIRMATIVE DEFENSES*
### *COMMON FACTS*
\* \* \*

3. That the EDENS PLAZA STATE BANK agreed to fund the SBA guaranteed loan to the PARK PLAZA RESTAURANT, INC. in the amount of $320,000 for the installation and operation of a new restaurant located at 150 North Michigan Avenue, Chicago, Cook County, Illinois.

4. That $270,000 of the loan was to be for construction of the restaurant facilities including the purchase of fixtures and equipment and $50,000 was to be for working capital.

5. When the SBA approved the loan transaction with Plaintiff and PARK PLAZA RESTAURANT, INC., the SBA determined that in order for the RESTAURANT to succeed, working capital in the amount of $50,000 would be necessary, as required by the SBA guidelines.

6. Each Defendant had extensively studied, analyzed and evaluated the capital requirements of the new venture with Plaintiff during the negotiations culminating with the loan agreement. Plaintiff knew, understood and agreed that funding and disbursing the $50,000 working capital portion of the loan was vitally necessary to the success of the venture. Plaintiff never manifested any intent that it would not dispense the $50,000 until after the loan documents were executed.

7. Defendants would never have executed guaranties but for their reliance on the provision for disbursement by Plaintiff of the $50,000 for working capital and Plaintiff's acknowledgment that the venture could not succeed unless it possessed sufficient working capital.

8. Since the venture had granted Plaintiff a written security interest in all of its assets, as was demanded by Plaintiff as a condition pursuant to execution of the loan agreement, Plaintiff had actual knowledge that, because all of the borrower's assets were encumbered, the venture had no practical ability to make other borrowings to obtain working capital.

9. Notwithstanding the express written covenant to fund and disburse the $50,000 for working capital as provided for in the loan agreement, written demands (Group Exhibit 'D') and numerous telephone calls, Plaintiff never disbursed any of the working capital moneys to the borrower. Instead, Plaintiff appropriated all of the working capital proceeds to itself by using the moneys earmarked for working capital to repay itself [*i.e.*, the interest] on the leasehold improvement and equipment portions of the loan.

10. Because of the failure of Plaintiff to provide the borrower with the $50,000 working capital and because Plaintiff held a first

lien on all of the assets of the borrower so that the borrower could not practically make other loans, the borrower failed, became insolvent, and ultimately filed a petition for relief under the bankruptcy laws on August 3, 1987, Docket No. 87 B 11272.

### FIRST DEFENSE

1. Plaintiff is estopped from seeking relief upon the Guaranties.

### SECOND DEFENSE

1. Plaintiff's flagrant breach of its implied covenant of good faith and fair dealing is a bar to any relief against Defendants.

### THIRD DEFENSE

1. Performance by Defendants was dependent upon performance by Plaintiff of all of its loan and disbursement obligations under the loan agreement.

### FOURTH DEFENSE

1. The conduct of Plaintiff is constructive fraud and operates to discharge Defendants from their Guaranties.

WHEREFORE, Defendants, GUS J. DEMOS; JAMES DEMOS; 120 SOUTH STATE STREET RESTAURANT, INC., an Illinois Corporation; and LOUIS DEMOS, pray that the Complaint be dismissed."

On October 10, 1990, Park Plaza Restaurant, Inc., filed a lawsuit against Edens Plaza Bank, suit No. 90—L—16268. The lawsuit is based upon the promissory note discussed herein. The complaint makes the same allegations that were included as affirmative defenses in suit No. 87—L—24944. In addition, however, based upon the same allegations, the complaint in suit No. 90—L—16268 also charges Edens Plaza Bank with breach of contract, consumer fraud and deceptive business practices, and bad faith with respect to the promissory note.

In 1990, suit No. 87—L—24944 and suit No. 90—L—16268 were consolidated. On April 26, 1993, which was the scheduled trial date of the consolidated lawsuits, Edens Plaza Bank and Park Plaza Restaurant, Inc., Gus Demos, James Demos and 120 South State Street Restaurant, Inc., executed a settlement agreement and mutual release, which dismissed with prejudice suit No. 90—L—16268 and count I of suit No. 87—L—24944, and dismissed the affirmative defenses asserted in suit No. 87—L—24944. The settlement agreement and mutual release provide:

"2. Except as to the promises and obligations set forth in this AGREEMENT, Edens, Borrower and Guarantors do hereby release and forever discharge each other, and their respective agents, attorneys, employees, shareholders, officers, directors,

predecessors, successors, assigns, heirs and personal representatives from any and all claims, demands, actions, petitions or suits of any kind whatsoever, whether known or unknown, from the beginning of time to the date of this AGREEMENT, including without limitation, all claims that were or could have been raised in the lawsuit or resulting from the aforementioned public sale, and all claims for attorney's fees and costs."

As a result of the settlement agreement and mutual release, the parties to the document filed the following stipulation in the trial court:

### "STIPULATION

IT IS HEREBY STIPULATED by and between the parties hereto, through their respective Attorneys, as follows:

1. That Count I of the Complaint herein against GUS J. DEMOS, JAMES DEMOS, and 120 SOUTH STATE STREET RESTAURANT, INC. be dismissed, with prejudice and without costs, all matters in controversy between the parties having been fully settled, compromised, and adjourned.

2. That the Affirmative Defenses of the Defendants, GUS J. DEMOS, JAMES DEMOS, and 120 SOUTH STATE STREET RESTAURANT, INC. be withdrawn and dismissed, with prejudice.

EDENS PLAZA BANK, an Illinois
Banking Corporation, Plaintiff

_____

GUS J. DEMOS, JAMES DEMOS, and
120 SOUTH STATE STREET RESTAURANT, INC.,
an Illinois Corporation, Defendants.

_____."

The agreed order of dismissal that was entered pursuant to the stipulation states: "This case continues as to James Demos on Count II." James Demos, however, was not a party to count II.

A bench trial was had as to count II in case No. 87—L—24944. The president of Edens Plaza Bank, John Jones, testified as to the disbursements that were made by Edens Plaza Bank and the fact that the SBA reimbursed the Edens Plaza Bank in the amount of $284,261.25. John Jones also testified that the assets of the Park Plaza Restaurant were sold at a public sale for $50,000, and that the $50,000 was applied towards a reduction of the amount due on the promissory note. Louis Demos was called as an adverse witness by Edens Plaza Bank, and he testified that he had signed the limited guarantee for the promissory note. No other witnesses testified, and no other evidence was received except for the following documents: (1) the promissory note for $320,000 (Edens Plaza Bank's exhibit I); (2) the limited guarantee signed by Louis Demos (Edens Plaza Bank's

exhibit II); and (3) a personal financial statement of Louis Demos (Edens Plaza Bank's exhibit III). No documentary proof or itemization was introduced into evidence relating to any unpaid balances, disbursements or interest due or paid under the promissory note.

After the conclusion of the trial, the trial court entered the following findings of fact, conclusions of law and judgment order:

"The Edens [Plaza] Bank filed a two-count Complaint in 1987 arising out of a $320,000 loan made to Park Plaza Restaurant, Inc., under case number 87—L—24944. Count I was directed against the borrower, Park Plaza Restaurant, Inc., and the primary guarantors of the entire loan: James Demos, Gus Demos and 120 [S]outh State Street Restaurant, Inc., Count II was directed against Louis Demos, who guaranteed only $50,000 of the loan. In 1990, Park Plaza Restaurant, Inc., commenced an action against Edens Bank under case number 90—L—16268, in which it alleged several lender liability claims similar to the affirmative defenses raised in the 1987 case. The two cases were consolidated for trial.

In 1986, the 120 South State Street Restaurant, Inc. sold all of its assets for $50,000. In addition, the SBA reimbursed Plaza $284,261.25 under a purchase agreement (guaranty agreement) between Plaza and the SBA. The loan was primarily guaranteed by Gus Demos, James Demos, and the 120 South State Street Restaurant, Inc., all of whom were released when, on the eve of trial, April 26, 1993, the parties settled this matter with respect to Count I of the Complaint under a Settlement Agreement and Mutual Release.

*Demos' Obligation Was Released When the Principal Debtors Were Released In The Settlement Agreement.*

'The general rule is that the liability of a guarantor is limited by and is no greater than that of the principal debtor and that if no recovery could be had against the principal debtor, the guarantor would also be absolved from liability.' *Hensler v. Busey Bank,* 598 N.E.2d 1269, 1274. Following this principle of liability, defendant's liability in the present case was extinguished by the Settlement Agreement and Mutual Release entered into by the parties in the underlying cause of action. In *Plane v. Cullom Capital Woodworking, Inc.,* 506 N.E.2d 1062, 1064 (4th Dist. 1987), the court held:

Although the language of a guaranty agreement ultimately determines a specific guarantor's liability, the general rule is that discharge, satisfaction, or extinction of the principal obligation also ends the liability of the guarantor.

In the case at bar, both the settlement agreement as well as the payments of $284,261.25 by the SBA and $50,000 from the UCC

personal property sale to Plaza satisfy the debt and leave no recourse against the defendant Louis Demos by Plaza. Furthermore, the defendant guaranteed the debtor's performance (limited to $50,000) of the $320,000 loan. That agreement ceased to exist with the settlement agreement and mutual release, and nothing remained for defendant to guarantee.

Now therefore, Judgment is hereby entered in favor of the defendant Louis Demos, and against the plaintiff, Edens Park Bank, on its complaint."

■ We agree with the trial court that the settlement and mutual release between the lender, Edens Plaza Bank, and the borrower, Park Plaza Restaurant, Inc., joined by the primary guarantors, for all claims and affirmative defenses for the promissory note, discharged and released the obligation and affirmative defenses of the limited guarantor, Louis Demos. Nothing remained for Louis Demos to guarantee or defend. (See *Hensler v. Busey Bank* (1992), 231 Ill. App. 3d 920, 598 N.E.2d 1269; *Palen v. Cullom Capital Woodworking, Inc.* (1987), 154 Ill. App. 3d 685, 506 N.E.2d 1062.) The trial court, therefore, properly entered judgment in favor of Louis Demos and against Edens Plaza Bank.

Edens Plaza Bank first contends that the trial court erred in holding that the promissory note was satisfied by virtue of the $284,261.25 payment by the SBA and the $50,000 from the public sale of the assets of the Park Plaza Restaurant. We need not decide that issue, however, because we affirm the judgment of the trial court on the basis that the settlement and mutual release between the lender, Edens Plaza Bank, and the borrower, Park Plaza Restaurant, Inc., joined by the primary guarantors, for all claims and affirmative defenses for the promissory note, discharged and released the obligation and affirmative defenses of the limited guarantor, Louis Demos.

■ Edens Plaza Bank next contends that Louis Demos' "obligations under the guaranty were not satisfied or released by the settlement agreement and mutual release" because the obligations of the borrower, Park Plaza Restaurant, Inc., "were discharged by the bankruptcy court." Edens' contention has no merit for several reasons. First, there was no evidence in the trial that the debt and obligations were discharged by the bankruptcy court. Nor is there any evidence in the record to establish that the debt and obligations were discharged in bankruptcy. There is an exhibit in the record which is a "Notice of Meeting of Creditors" pursuant to a filing under chapter 11 of the Bankruptcy Code. A notice of meeting of creditors under a chapter 11 filing, however, does not mean that a debtor or particular

debt or obligation has been discharged. Moreover, a chapter 11 debtor may be denied discharge. (See generally 9B Am. Jur. 2d Bankruptcy § 2982 (1991).) A judgment must be examined based on the evidence at trial and by the proofs in the record at the time the judgment was entered. Here, there was no evidence at trial and no proof in the record at the time the judgment was entered that any debt or obligation was discharged in bankruptcy.

In addition, this case involves a settlement and release given by the creditor, Edens Plaza Bank. It does not involve a bankruptcy claim or proceeding on a bankruptcy debt. In none of the cases referred to by Edens Plaza Bank in its brief did the creditor execute a settlement and release of all of its claims against the debtor and primary guarantors of the debt. Here, the settlement agreement and mutual release speaks for itself, and what it says is that "Edens (Edens Plaza Bank), Borrower (Park Plaza Restaurant Inc.) and Guarantors do hereby release and forever discharge each other *** from any and all claims, demands, actions, petitions or suits of any kind whatsoever, whether known or unknown, from the beginning of time to date of this AGREEMENT, including without limitation, all claims that were or could have been raised in the lawsuit or resulting from the aforementioned public sale, and all claims for attorney's fees and costs." Thus, it is plain that there was nothing left for the limited guarantor, Louis Demos, to guarantee or defend.

Lastly, Edens Plaza Bank contends that "the trial court's finding of lender liability was rendered without the offer of any evidence to support the finding of fact and conclusion of law." We need not decide that issue, however, since the judgment in favor of Louis Demos was properly entered based upon the settlement and mutual release between the creditor, Edens Plaza Bank, and the debtor and primary guarantors for the promissory note.

Accordingly, the judgment entered in the trial court is affirmed.

Affirmed.

TULLY, J., concurs.

PRESIDING JUSTICE GREIMAN, dissenting:
Working our way through pages of debits and credits and, in their entirety, affirmative defenses not considered by the trial court or this court as a basis for their decision, the majority opinion appears predicated upon the conclusion that (1) there was no longer any indebtedness to be guaranteed or (2) the settlement of the case against the primary obligors extinguished the liability of the defendant under his written guaranty.

Can the clear language of the instrument of guaranty be ignored? This transaction is based upon a loan by Edens Plaza Bank (the Bank) which is guaranteed by the Small Business Administration (SBA). The loan is further guaranteed by the defendant and others.

The majority makes much of the fact that the SBA has paid a large sum to the Bank in satisfaction of its obligations under its loan agreement with the Bank and that the Bank has also received the proceeds of the sale of the debtor's restaurant equipment and fixtures in reduction of the loan.

The instrument of guaranty executed by the defendant, however, has been carefully tailored to be a part of an SBA transaction. The guaranty expressly provides:

"The Undersigned acknowledges and understands that if the Small Business Administration (SBA) enters into, has entered into, or will enter into, a Guaranty Agreement with Lender or any other lending institution, guaranteeing a portion of Debtor's liabilities, the Undersigned agrees that it is not a coguarantor with SBA and shall have no right of contribution against SBA. The Undersigned further agrees that all liability hereunder shall continue notwithstanding payment by SBA under its Guaranty Agreement to the other lending institution."

It seems clear that the payment by the SBA was not intended to affect the defendant's liability under the guaranty. The reason for this is apparent from the ample testimony concerning the relationship between the Bank and the SBA. Under the terms of the SBA lending agreement, sums collected from debtors or guarantors after payment of the loan by the SBA shall be remitted to the SBA in reduction of its outlay.[1]

The evidence also showed that the $50,000 received by the Bank upon the sale of the restaurant equipment and fixtures was not retained by the Bank, but rather that $45,000 was remitted to the SBA and only $5,000 was retained by the Bank.

The general rule is that the liability of the guarantor is limited by and is no greater than that of the principal obligor and that if no recovery could be had against the principal obligor, the guarantor would also be absolved from liability. (*Hensler v. Busey Bank* (1992), 231 Ill. App. 3d 920, 596 N.E.2d 1269.) Similarly, the general rule is that discharge, satisfaction or extinction of the principal obligation also terminates the guarantor's liability. *Palen v. Cullom Capital Woodworking, Inc.* (1987), 154 Ill. App. 3d 685, 506 N.E.2d 1062.

---

[1]Although the agreement between the Bank and the SBA was not offered into evidence, there was testimony from the Bank's president establishing the specifics of the relationship between the parties.

The express language of the agreement, however, leads to the conclusion that Demos remains liable upon his guaranty of $50,000 despite the SBA payment to the Bank. Substantially similar agreements have been enforced against the guarantor seeking release, since, under Illinois law, "[w]here a contract of guaranty is unequivocal in its terms it must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports." *National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 402, 243 N.E.2d 264; see also *Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 450 N.E.2d 347.

Moreover, the few cases addressing SBA-lender participation agreements have held that the relationship created by the agreement is an independent one between the lender and the SBA, creating no legal rights, duties, or benefits in third parties. *United States v. Perkins* (E.D. Okla. 1975), 71 F.R.D. 22; *United States v. Martin* (E.D. Mich. 1972), 344 F. Supp. 350.

Finally, as to the first issue raised by the defendant, neither the trial court nor the majority examines or considers the testimony as to accrued interest still due and owing under the principal obligation. While there may be some question as to the amount of the interest due and owing—did it continue to accrue upon the full balance after the SBA paid its share?—the majority ignores completely this factor of the defendant's liability which would greatly increase the balance due.

The majority's conclusion that release of the principal obligors or other guarantors acts as a release of the defendant is equally without substance. Again, the terms of the instrument of guaranty have been ignored! The guaranty allows the Bank "full power, in its uncontrolled discretion," "to modify or otherwise change any terms of all or any part of the Liabilities" and to "effect any release, compromise or settlement with respect thereto."

In the case at bar, the trial court determined that release of other guarantors also released the defendant. Again, the language of the instrument controls and it is clear that the Bank may deal with each guarantor in a separate manner and that release of one does not necessarily release the others. *Cohen v. Continental Illinois National Bank & Trust Co.* (1993), 248 Ill. App. 3d 188, 618 N.E.2d 1060; *Brzozowski v. Northern Trust Co.* (1993), 248 Ill. App. 3d 95, 618 N.E.2d 405.

If the express terms of the instrument of guaranty signed by the defendant are still not enough, then we must look to the events surrounding the dismissal of count I as to the other parties.

In construing a release and settlement agreement, the intention of the parties controls the scope and effect of the release and such intent is discerned from the language used and the circumstances of the transaction. (*Village of Fox River Grove v. Grayhill, Inc.* (N.D. Ill. 1992), 806 F. Supp. 785.) The record indicates that both the agreement itself and the parties' intentions envisioned continued litigation between the Bank and Demos. The agreed order of dismissal reflecting the settlement agreement dismisses only count I of the Bank's complaint, specifically maintaining the second count pertaining exclusively to defendant. The only reasonable construction of the release agreement would be recognition that the parties did not intend to release defendant from his original guaranty.

In fairness, the majority appears to be attempting to provide a sort of rough justice since the defendant was the individual with the least to gain from the transaction and ends up with the largest personal liability. Defendant was a good brother in guaranteeing this obligation but will have to exercise more caution in the future use of his fountain pen.